IRON RAILROAD COMPANY v. LAWRENCE FURNACE COMPANY.

1. The provision in the twelfth section of the general railroad act of February 11, 1848 (S. & C. 273), that no reduction shall be made in the rates of fare and charges for freight allowed to companies organized under said act, unless where their net profits for the previous ten years amount to ten per cent. on their capital, is in the nature of a contract and binding on the state.

2. Railroad companies organized under said act of 1848, before the adoption of the present constitution, and who have not relinquished their right to be governed by said act, and had not realized a net profit of ten per cent. on their capital for the ten years next preceding the passage of the act of March 30, 1875 (72 Ohio L. 142), are not bound by provisions of the latter act reducing their rates of fare or freight below those allowed by section 12 of said act of 1848.

ERROR to the District Court of Lawrence county.

This was an action by the Lawrence Furnace Company against the Iron Railroad Company to recover a penalty

for charging and receiving rates of freight exceeding those
allowed by the act of March 30, 1875 (72 Ohio L. 142).
The defendant (the railroad company) was organized prior
to the adoption of the present constitution, under a specia¹
act of incorporation passed in 1849, and which, by express
provision, gave to the company all the rights, and sub-
jected it to all the liabilities, created or imposed by the
general railroad act of February 11, 1848 (S. & C. 273).
The twelfth section of said act of 1848 prescribes the rates
that railroad companies may charge for freight and passen-
gers, and provides that " no reduction" in these rates shall
be made by the legislature, " unless the net profits of the
company, on an average for the previous ten years, shall
amount to a sum equal to ten per centum per annum on
its capital, and then not so as to reduce the probable profits
below the said per centum." The rates of freight charged
and received by the defendant were not in excess of those
allowed by this section, but they exceeded those prescribed
by said act of 1875; and the plaintiff's petition contained
no statement as to the amount of profits made by the de-
fendant, or as to the probable amount of profits that the
rates allowed by the act of 1875 would yield in the future,
if adopted.

The defendant answered, setting up, nominally, five sep-
arate grounds of defense: 1. That the defendant was in-
corporated and organized under said act of 1849 as afore-
said. 2. That the net profits of the company for the ten
years next preceding the date of the act of April 30, 1875,
did not amount to ten per centum on its capital. 3. That
the probable future profits of the company would be less
than ten per centum, if governed by said act of 1875. 4.
'That the legislature, by passing the act of April 25, 1873
(70 Ohio L. 161), fixing rates of fare and freight, had ex-
hausted its power over the subject, and could not, for the
ten years next ensuing, again change the rates fixed by the
last-named act so as to affect the rights of companies gov-
erned by the act of 1848. The fifth ground of defense

merely repeats parts of the other defenses, and alleges that the company has made no dividends; that its net earnings have been expended in equipment and construction of the road, and that it will be unable to make any profits in future, if governed by the act of 1875.

To these several defenses the plaintiff demurred; the court sustained the demurrer, and rendered judgment for the plaintiff; the judgment was affirmed by the district court; and leave is now asked by the defendant to file a petition in error to reverse the judgments of both courts.

*O. F. Moore*, for plaintiff in error:

I. The charter of the railroad company was a contract between the company and the state, which can not be impaired by subsequent legislation, nor can its rights or franchises be modified or restricted, except as provided for in the law of its creation. *Dartmouth College* v. *Woodward*, 4 Wheaton, 518; *Kelley* v. *Jefferson Branch Bank*, 1 Black, 436; 16 How. 359; 18 How. 331, 380; Redfield's American Railway Cases, 526–528, notes; *Binghampton Bridge Case*, 3 Wallace, 73; *Wilmington Railroad Co.* v. *Reed*, 13 Wallace, 244; Cooley's Constitutional Limitations, 279 and notes; Green's Brice's Ultra Vires, Appendix, 667–669.

II. The state, by a change in its constitution, is as powerless to modify or restrict the rights and franchises of a corporation or to impair the obligations of a contract, as it was by legislation under the organic law. All legislation under the new constitution is *prospective*, and can in no way affect rights secured or franchises granted under the old. *State ex rel. Drake* v. *Roosa et al.*, 11 Ohio St. 16; *Ireland* v. *Palestine, B. N. P. & N. W. Turnpike Co.*, 19 Ohio St. 369.

III. The grant of power to a railroad company, by the terms of its charter to charge certain rates named for the transportation of persons or property, is the grant of a franchise, and is in the nature of a contract that the legislature of a state is competent to make. It is not of a character to preclude a state from the exercise of the right of eminent domain. It is not the grant of a right to exercise

the police power of the state. Cooley's Constitutional Limitations, 280–282 and notes. Such a grant falls clearly within the meaning of a contract, the obligation of which can not be impaired. Cooley's Constitutional Limitations, 284–286 and notes.

IV. The police power of a state and its proper exercise does not warrant a legislature in modifying or limiting a railroad company in charging for the transportation of property allowed by its charter. Cooley's Constitutional Limitations, 576–580 and notes.

V. If, by the act creating the corporation, or by the terms of the law under which it is organized, the right to modify or restrict the franchises conferred is reserved to be exercised at or after a period named, or upon the happening of a contingency specified, the right to so modify or restrict can only be exercised at or after the time named, or upon the happening of the contingency, or upon the condition specified. Any modification or restriction at any other time, or before the contingency has happened or the condition has arisen, is an impairment of the obligation that is inhibited by the constitution. *Washington Bridge Co.* v. *The State*, 18 Conn. 53.

VI. The right conferred upon the plaintiff in error by its act of incorporation, to demand and receive compensation for the transportation of passengers and property over its road, is prescribed and regulated by section 12 of the act of February 11, 1848, and could only be modified by an amendment to that section. Section 16 of article 2 of the constitution provides that " no law shall be revived or amended unless the new act contain the entire act revived, or the section or sections amended ; and the section or sections so amended shall be repealed."

The act of March 30, 1875, neither contains section 12 of the act of 1848 as amended, nor is the original section repealed.

*W. H. Enochs*, also for plaintiff in error, claimed that the act of March 30, 1875 (72 Ohio L. 143), was unconstitu-

tional, and cited section 26, article 2 of the constitution of Ohio; *Kelley v. The State*, 6 Ohio St. 269; 14th amendment to the constitution of the United States; *Bartemeyer v. Iowa*, 18 Wall. 132; *R. R. Company v. Maryland*, 21 Wall. 471; *License Cases*, 5 How. 576; *Brown v. State of Maryland*, 12 Wheat. 419; 2 Kent Com. 320; *Wynehamer v. The People*, 13 N. Y. 398; 17 Ohio St. 125; 23 Ohio St. 15; 2 Gray, 349; *Commercial Bank of Cincinnati v. The State*, 7 Ohio, pt. 1, 125; *Woodworth v. Dartmouth College*, 4 Wheat. 518; *Debold v. The Ohio Life & Trust Company*, 1 Ohio St. 563; *Merchants & Traders' Bank v. Debold*, 1 Ohio St. 591; *Knoup v. Piqua Bank*, 1 Ohio St. 603; *Toledo Bank v. Bond*, 1 Ohio St. 623; 3 Ohio St. 576; 16 How. 369; 5 Ohio St. 444; Ib. 447; 6 Ohio St. 342; 7 Ohio St. 481; 9 Ohio St. 606; 1 Black. (U. S.) 436; 23 Ohio St. 105; 20 Wall. 445; 27 Ohio St. 155; *Miller v. The State of N. Y.*, 15 Wall. 476; *Pacific Railroad Co. v. McGuire*, 20 Wall. 42; *Railroad Co. v. Maryland*, 21 Wall. 456; *Donohoe v. State*, 8 Sneeds & M. 649; *Tinsley v. B. & D. R. R. Co.* 2 Dutch. 148; *Tharpe v. R. & B. R. R. Co.* 27 Vt. 140; *Dearborn v. B. & M. R. R. Co.*, 4 Foster, 179; also see Cooley's Constitutional Limitations, and the numerous cases therein cited, marginal page 279.

*Neal & Cherrington* also for plaintiffs in error.

*W. A. Hutchins* for defendant in error.

WELCH, C. J. If either of the defenses set up in this answer is a bar to the action, the court erred in sustaining the demurrer, and its judgment should have been reversed. The defenses are needlessly separated, and might, as it seems to me, have been conjoined as a single ground of defense. Without undertaking to decide upon the value or sufficiency of each of the several defenses, separately considered, it is sufficient to say that, in our judgment, the *second*, which alleges that the company's profits for the ten years next preceding the date of the act of 1875 was less than ten per cent., is a bar to the action, unless avoided by some matter in reply. To

deny that the charter of the company, granted and accepted under the constitution of 1802, is to be regarded as in the nature of a contract between the company and the state, would be to unsettle established law. By this charter, the state expressly agreed, that if the company would accept the charter, organize under it, and build and operate the road, no reduction should be made in the specified rates of charges until its net profits for ten consecutive years should amount to ten per cent. per annum upon its capital. The demurrer to the second ground of defense admits that this contingency has never happened, and that to reduce the defendant's rates of fare, under the circumstances existing at the date of the act of 1875, would be a direct violation of the contract made by the state.

The validity of this defense is denied on three grounds:

1. It is said that the regulation of rates of fare and charges for freight are mere matters of police, and that legislative power over the subject is *implied* in all charters. Whether this may be the law in cases where the charter is silent as to rates of charge, or where it merely specifies them, without any special agreement as to their alteration, we need not now decide. Here there is a special agreement that they shall not be reduced except on the happening of a named contingency, and then only to a specified extent. In such a contract there is no room for implication. The power claimed is expressly relinquished by the state.

2. It is contended that the power to regulate charges for freight and fare is in such a sense a police power that the legislature can not part with. We think the contrary is well established as the law. The right to take tolls, fare, or charges for freight is of the essence of such a charter. Its value depends almost exclusively upon that right. The power to take away the right to receive tolls, or to reduce them to a minimum, is substantially equivalent to an unlimited power of repeal.

3. It is claimed that the legislature having made the act of 1875 applicable to this company, we must presume that the legislature *found* the existence of the contingency on

which it might be passed, namely, that the profits of the company for the previous ten years had exceeded ten per cent., and that that finding is conclusive of the fact. Had the act been prefaced by a preamble reciting such a finding, or had the act been made specially applicable to this company, by name or otherwise, we do not say that such would not have been the law of the case. But here there is no preamble or express finding, nor can any such finding be reasonably presumed. The act is made applicable to all railroad companies alike. If we presume any finding at all, it must be a finding that all the railroad companies chartered under the old constitution are making ten per cent. net profits on their capital, and that their future profits under the act of 1875 would amount to ten per cent. This would be quite an unwarranted presumption. The utmost effect that can be given to the act of 1875, so far as regards these old companies, is to make it applicable where the contingency authorizing legislative interference has in fact occurred.

We think, therefore, that the act of March 30, 1875, in so far as it assumes to reduce the rates allowed to companies organized under the act of 1848, and prior to the adoption of the present constitution, whose net profits for the ten previous years were in fact below ten per cent. on their capital, and who have not relinquished their right to be governed by the last named act, is unconstitutional and inoperative.

*Judgment reversed, demurrer sustained, and cause remanded.*