WiuwAMS, C. J.
The plaintiff’s claim to the penalty, for the recovery of which the original action was brought, is based upon the act of March 30, 1875, (72 Ohio L. 143), which, among other things, provides, that “any corporation operating a railroad, in whole or in part, in this state,” which “shall demand or receive,” more than five cents per ton per mile for the transportation of pig iron, iron ore, etc., for any distance of five miles or more, “shall pay to the part3'' aggrieved for every such overcharge a sum equal to double .the amount of the overcharge, but in no case less than one hundred and fifty dollars to any bona fide claimant using said road in the due course of his business.” The provisions of the act are made applicable “to all railroads now in operation in this state, or organized under the provisions of the act entitled ‘ an act regulating railroad companies,’ passed February 11, 1848, and all other railroad companies now in operation chartered' by special acts of the general assembly since the passage of said act, which by the acts of incorporation make such railroad companies subject to the restrictions of said act of February 11, 1848, and to all railroads and railroad companies organized under any of the laws of Ohio;” except railroads not exceeding twelve miles in length, and those in course of construction, whose gross earnings are less than four thousand dollars per mile, “where such railroads are not owned or operated by corporations operating another road.”
*111 The defendant company, it appears from the record, was incorporated under a special act of the general assembly, passed March 7, 1849, by the third section of which, it is provided, that the company “shall have all the powers and be subject to all the restrictions and provisions of the act regulating railroad companies, passed February 11,1848.” The twelfth section of the last mentioned act, authorizes such railroad companies to charge such reasonable rates for the transportation of freight for a less distance than thirty miles, “as may be from time to time, fixed by said company.” It contains the further provision, that “ at any time after the expiration of ten years, from the time any such road may be put in operation, it shall be lawful for the general assembly to prescribe the rates to be charged for the transportation of persons or property upon said road, should they be deemed too high, and may exercise the same power ten years thereafter: Provided, that no reduction shall be made, unless the net profits of the company, on an average for the previous ten years, shall amount'to a sum equal to ten per centum per annum upon its capital, and then not so as to reduce the future probable profits below the said per centum.”
In a case between these parties, reported in 29 Ohio St. 208, it was held, that railroad companies, incorporated as was the defendant, which had not relinquished their right to be governed by the act of 1848, “ and had not realized a net profit of ten per cent, on their capital for the ten years next preceding the passage of the act of March 30,1875, are not bound by provisions of the latter act reducing their rates of fare or freight below those allowed by section 12 of said act of 1848.” Unless, therefore, the defendant, either realized such profits for the period mentioned, or relinquished its right to be governed by the act of 1848, it did not incur the penalty recovered against it in the courts below. But if it did either, then the judgment for the penalty was correct. Whether the requisite amount of profits were so realized, depends upon the effect given the term “capital,” as used'in the proviso of section 12 of the act of 1848. If, by it, is meant the actual capital stock of the companj'', then *112 the parties agree that the profits of the defendant were sufficient to make it subject to the provisions of the act of March 30, 1875. But, if it embraces not only the capital stock, but also the accumulated profits retained in its business, and as represented by the actual value of the property of the company, or, stock dividends amounting to $175,550.00, for which stock was issued on the 27th day of April, 1875, to the subscribers to the capital stock, as interest on the amount of their subscriptions, then the profits were not sufficient. When applied to corporations, the word “capital” is sometimes used in the sense of corporate property, and is distinguished from the shares and certificates of stock, which are the individual property of the stockholders and form no part of the capital of the company. Bradley v. Bauder, 36 Ohio St. 28. But the capital of a corporation, is generally understood and defined to be the property or means contributed by the stockholders as the fund or basis for the business or enterprise for which the corporation was formed. The word “stock” is sometimes added, and the phrase “capital stock,” is used couvertibly with the word “capital.” It is so used, in at least one instance, in the statute under consideration, as will be seen by reference to section six, which is as follows: “That whenever any railroad company heretofore incorporated, or created and incorporated under the provisions of this act shall, in the opinion of the directors thereof, require an increased amount of capital stock, the3 shall, if authorized by the holders of a majority of the stock, file with the auditor of state a certificate setting forth the amount of such desired increase, which shall not exceed the amount of the original capital of said company, and, thereafter, such company shall be entitled to have such increased capital as is fixed by said certificate.” This, while not controlling, is not without its importance in determining with what meaning and intent the legislature used the word “capital” in the subsequent section (section 12) of the same statute. Grounds of a more satisfactory character, however, for the construction we have concluded the statute should receive, are found in section twenty. That section requires *113 each railroad company incorporated under the act, to make a report, in January of each year, to the auditor of state, “showing the amount of the capital stock of such company, the gross amount of tolls or receipts during the previous year, the cost of repairs and incidental expenses, the net amount of profits, and the dividends made; with such other facts as may be necessary to a full statement of the affairs and condition of such road, and the auditor shall annually, present an abstract of such report to the general assembly.” The object of the report to the auditor, and of the abstract required of him, evidently was, to furnish the legislature, the necessary information, to enable that body to intelligently exercise the power reserved to it by the twelfth section. With the amount of the gross receipts, the cost of repairs, and expenses of operating the road, before it, the legislature could readily ascertain the net profits for the period covered by the report; and having before it also, the amount of the capital stock, it is but a matter of calculation to determine whether the profits equal ten per cent, of that amount. And it is this result, for the requisite period of time, we think, that determines the power of the legislature, under the twelfth section, to reduce the rates for the trans--portation of persons or property by such companies. If it had been intended, that the value of the corporate property should be the basis of the computation, and, that the profits must equal ten per cent, on that amount for the specified number of years, to authorize the enactment of any law making reductions in the rates, it seems improbable that the legislature would have failed to require the value of the corporate property to be set forth in the report. True, it is provided, that the report shall contain “ such other facts as may be necessary to a full statement of the affairs and condition of such road,” and under this provision the company might include in its report the value of all the property belonging to the corporation; but it is not likely, that a matter so important, would be left to the discretion of the company, or be provided for only, in such general terms. The statute, in specific terms, requires the amount of the capital stock to be shown in the report, the necessity of *114 which is not apparent, unless that is to be taken as the basis of the computation. Treating it as such, that, with the other facts which are also required to be specifically shown by the report, afford the general assembly all the information essential to intelligent legislation on the subject. looking to the whole statute, we are of the opinion, that by the phrase “its capital,” in the proviso of section 12 of the act of February 11, 1848 (1 S. & C. 271) is meant the capital stock of the company; and railroad companies incorporated under that act, or by special act which confers upon the company the powers, and makes it subject to the restrictions and provisions of that act, whose net profits, on an average of the ten years next previous to the passage of the act of March 30, 1875, amounted to a sum equal to ten per centum per annum upon the actual capital stock of the company, are bound by the provisions of the last named act, reducing the rates which may be charged for the transporation of persons or property upon the road of such company.
The limitation upon the amount of the reduction, contained in section 12 of the act of 1848, namely, that the reduction of the rates shall not be such “ as to reduce the future probable profits below said per centum,” does not make it a condition to the validity of the reduction, that the future profits shall in fact equal that sum. It simply enjoins upon the legislative body, the duty of exercising its deliberate judgment upon the facts before it, in regard to the probable future profits of such companies, and it must be presumed, that in the enactment of legislation on the subject, that body has properly and in good faith performed the duty, and regulated the rates accordingly. And if at the time of the passage of the law, the necessary facts exist which authorize its enactment and application to such companies, a subsequent change in the condition or affairs of the company will not take it out of the operation of the statute. Such changes may call for future legislation, from time to time, but cannot defeat the application of the statute so long as it continues in force. Hence, the fact, that after the adoption of the act of March 30, 1875, the defendant declared certain stock dividends, and issued stock for amounts ascertained by comput *115 ing interest on the original subscriptions, as shown by the agreed statement of facts, did not affect the application of that act, nor relieve the defendant of the consequences of exacting rates in excess of those allowed by it.
Nor did the repeal of the statute, by the act of April 6, 1876, afford a ground of defense. The plaintiff’s cause of action accrued, and the action was commenced before the repeal occurred; and the repealing statute expressly saves actions pending at the time of its passage, and causes of action which theretofore “accrued to any person from whom such railroad company or corporation, by its officers or agents, shall have demanded or received fare or freight, at a rate above that allowed by law; provided, such person paid overcharge while using such railroad in the due course of his or her business, and not for the purpose -or with the view of obtaining the penalty provided by law for such overcharges, and such person may maintain his or her action in any court of competent jurisdiction for the recovery of such penalty.” The plaintiff’s action is within the terms of the saving clause.
But, while we think the plaintiff below was entitled to judgment for the penalty, it was error, in our opinion, to include interest upon it. The statute creating the penalty does not allow interest, and the liability is not of that character which entitles it to draw interest under the general statutes regulating the subject. Section 3179, (Revised Statutes) gives parties to bonds, bills, promissory notes and other instruments of writing for the forbearance or payment of money at a future time, the .right to stipulate therein, for the. payment of interest at any rate not exceeding 8 per cent, per annmm; and section. 3180, requires that “Upon all judgments, decrees, or orders, rendered upon any bond, bill, note, of other instrument of writing containing stipulations for the payment of interest in accordance with the provisions of section 3179, interest shall be computed till payment at the rate specified in such instrument.” Section 3181 provides, that “ In cases other than those provided for in the two preceding sections, when money becomes due and payable upon any bond, bill, note, or other instrument of writ *116 ing hereafter made, upon any book account, or settlement hereafter made between parties, upon all verbal contracts hereafter entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of a contract hereafter made, or other transaction which hereafter occurs, the creditor shall be entitled to interest at the rate of six per cent, per annum and no more.”
It is evident, penalties given by statute, do not belong to any of the classes of liabilities which bear interest under either of the sections alluded to. And, as was said by McElvaine, C. J., in Higley v. First National Bank of Beverly, 26 Ohio St. 81: “ Interest on such a claim, before judgment, not being expressly given by the statute, cannot be allowed.” Besides, no interest was claimed in the petition.
As the precise amount of interest recovered.is apparent on the face of the judgment, it is not necessary to remand the cause for the correction of that error, but the judgment will be here modified by deducting the interest, and in other respects affirmed.

Judgment accordingly.